# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

VIELKA M. LIPPE and )
CHRISTOPHER LIPPE, individually, )
and as husband and wife, )
           )
         Plaintiffs, )
           )
v. )      Case No. CIV-15-331-D
           )
CHRISTOPHER HOWARD, an )
individual and in his official capacity )
as a Police Officer for the City of )
Oklahoma City; and )
THE CITY OF OKLAHOMA CITY, a )
municipal corporation )
           )
         Defendants. )

## ORDER

Before the Court is Defendant Christopher Howard's Motion for Summary Judgment [Doc. No. 98], filed pursuant to FED. R. CIV. P. 56. Plaintiffs (hereinafter "the Lippes") responded in opposition [Doc. No. 106], and Defendant Howard replied [Doc. No. 110]. The matter is fully briefed and at issue.

## BACKGROUND

Mr. and Mrs. Lippe bring suit under § 1983 and state law for injuries allegedly suffered from Mrs. Lippe's encounter with Defendant Christopher Howard ("Howard"), a police officer for the City of Oklahoma City (the "City"). The Lippes[1] have sued the City and Howard. The Court will take up the City's Motion for Summary Judgment [Doc. No.

---

[1] Mr. Lippe's claims are derivative of Mrs. Lippe's claims as he was not present when the incident occurred.

93] separately.

Howard's encounter with Mrs. Lippe began when he approached her with his gun drawn and told her to get out of her car on February 1, 2014. The Lippes claim Howard conducted an unreasonable seizure in violation of the Fourth Amendment because he lacked reasonable suspicion or probable cause that Mrs. Lippe had committed any crime. *See* First Am. Compl. [Doc. No. 13 at ¶¶ 43-46]. The Lippes also claim that Howard used excessive force in effecting the seizure. *Id*. at ¶ 45. The First Amended Complaint asserts four claims against Howard individually: 1) a § 1983 claim for unlawful seizure and excessive use of force; 2) intentional infliction of emotional distress; 3) intentional violations of the Lippes' state constitutional protections; and 4) negligence.

## STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (*quoting* FED. R. CIV. P. 56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). At the summary judgment stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corporate Services*, 849 F.3d 889, 896 (10th Cir. 2017).

2

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-671 (10th Cir. 1998) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant meets that burden, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671; *see also* FED. R. CIV. P. 56(c)(1)(A). To accomplish this, the nonmovant must identify facts by reference to the pleadings, depositions, other discovery materials, exhibits or affidavits. *See Id.* The Court is not limited to the cited materials, but rather may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Unsupported conclusory allegations are not sufficient to defeat summary judgment. *Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

## FACTS[2]

On February 1, 2014, the Lippes and Howard lived in the Talavera neighborhood in southwest Oklahoma City. Prior to that date, they had not met. Lindsey Wren lived on the

---

[2] This statement includes material facts presented by both parties that are supported as required by FED. R. CIV. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded. All facts are stated in the light most favorable to Plaintiffs.

same street as Howard and his wife, Tiffany Howard. Mrs. Wren also knew the Lippes. Mrs. Lippe called Mrs. Wren on the evening of February 1, 2014, and asked to borrow a humidifier. That same evening, Mrs. Wren sent a Facebook message to Tiffany Howard. Mrs. Wren stated in the message that she believed someone had attempted to enter her home that morning at 9:00 a.m. by using the garage door opener in the Wren's truck. Mrs. Wren's home was not burglarized, nothing was stolen, no one was arrested and the garage door opener was left in the truck. Mrs. Wren also stated that the day before her dog barked when a tall black man wearing a black shirt and hat came to the door.

At about 10:30 p.m., Tiffany Howard either showed or told Howard about the Facebook message and asked him to get his garage door opener from his truck. Howard, who was wearing black basketball shorts, got out of bed and put on a hooded sweatshirt and flip-flops. He also grabbed his Springfield XD-40 handgun.[3] Howard was not wearing anything that would have identified him as a police officer. He went out the front door to his truck, which was parked in the driveway, at about 10:45 p.m.

---

[3] Howard owns several firearms. In his deposition, he identified the .45 caliber Glock as his "City-issued firearm," but not his primary "on duty" weapon. Def. Howard's Dep. [Doc. No. 106-5 at 66, 175]. He identified his Springfield XDM .45 as his primary "on duty" weapon. *Id*. at 175. The Springfield XD-40 is the firearm he is "qualified with" for off-duty purposes. *Id.* at 177. This was the firearm he had when he approached Mrs. Lippe. He also has a Taurus TCP .380. *Id*. The parties dispute whether the Springfield XD-40 was authorized by the City for use. *See* City's Mot. for Summ. J. [Doc. No. 93 at ¶ 16]; *cf.* Pls.' Resp. in Opp'n [Doc. No. 103 at ¶ 16]. OCPD Police Chief William Citty testified in his deposition, "We expect them to enforce the law if they're off duty and they see something that's happening." Citty's Dep. [Doc. No. 103-1 at 79]. He also indicated that Howard received a Class 1 reprimand from the City for not having his police badge while carrying his gun during the night in question. *Id.* at 183.

At the same time, Mrs. Lippe left her house to pick up the humidifier at Mrs. Wren's house. Mrs. Lippe was not certain which house was the Wren's house as she had only been to their house once before. She drove back and forth on Toledo Drive and 172nd Street before parking in the wrong direction in front of the Wren's house. As soon as Howard stepped outside, he saw the vehicle driven by Mrs. Lippe. He saw an individual in a hooded sweatshirt get out of the car, walk up to the Wren's house, and then quickly walk back to the vehicle carrying a large, bulky item.

Based on these observations, Howard suspected he was witnessing a crime and began walking toward the car to "see what was going on." Howard's expert, Joe Callanan, testified it was reasonable under the circumstances for Howard to initiate an investigation. Howard approached the car with his gun drawn. Mrs. Lippe heard him say something about being a "cop," but she did not believe that he was a police officer because he was not in uniform or wearing a police badge.

It is undisputed that at some point Howard's hand holding the firearm entered the open driver's side window of Mrs. Lippe's car. However, the sequence of events is disputed. Howard maintains that Mrs. Lippe placed her foot on the accelerator, and the driver's side quarter panel and side mirror of the car struck him while the car was in motion. He asserts that the car spun him around and his right hand holding the firearm went into the open driver's side window of Mrs. Lippe's car. He disputes that he struck Mrs. Lippe in the head with his firearm.

Mrs. Lippe, on the other hand, maintains that she tried to drive away from Howard

because he was acting hostile and had a gun.[4]  She maintains that he stuck his hand with the loaded firearm through the open driver's side window of the car and hit her on the head with the gun while yelling, "I am going to kill you."[5]

Both parties agree that the vehicle came to a stop when it hit a curb.  The parties dispute whether Mrs. Lippe suffered injuries from the altercation.  Mr. Lippe was not present when the incident occurred.  He arrived later in response to a telephone call from Mrs. Lippe.

## DISCUSSION

### A.    Mrs. Lippe's § 1983 Claim for Unlawful Seizure and Excessive Force

Howard asserts that he is entitled to summary judgment on Mrs. Lippe's § 1983 claim based on qualified immunity.  When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the burden is on the plaintiff to show that 1) the defendant "violated a constitutional or statutory right"; and (2) that the right was "clearly established at the time of defendant's unlawful conduct."  *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1150 (10th Cir. 2006) (*quoting Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).  If the plaintiff satisfies this two-pronged test, the burden shifts back to the defendant, who must prove that "no genuine issues of material fact" exist

---

[4] Mrs. Lippe asserts that Howard with his gun pointed at her yelled, "Get out of the car fucking bitch!"

[5] Howard disputes that he made this statement.  He does admit that after Mrs. Lippe's vehicle hit the curb he said, "Stop the fucking car.  I'm going to shoot you."  Def. Howard's Dep. [Doc. No. 98-2 at 128; Doc. No. 106-5 at 135-136].

and that the defendant "is entitled to judgment as a matter of law." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). "When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be 'properly denied.'" *Id.* (*quoting Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir. 1991)).

Thus, the Court's "threshold inquiry in the qualified immunity analysis is whether, taking [Mrs. Lippe's] allegations as true, [Howard] violated [her] Fourth Amendment right to be free from unreasonable seizures." *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007) (*quoting Jones v. Hunt*, 410 F.3d 1221, 1225 (10th Cir. 2005)). The Tenth Circuit analyzes claims of excessive force under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Mecham*, 500 F.3d at 1204. The Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotations omitted). Further, the reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The Fourth Amendment standard requires inquiry into the factual circumstances confronting the officer, without regard to the officer's underlying intent or motivation. *Id.* Relevant factors "include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Mecham*, 500 F.3d at 1204.

*1)     Was Mrs. Lippe subjected to a seizure?*

"[W]ithout a seizure, there can be no claim for excessive use of force." *Jones v. Norton*, 809 F.3d 564, 575 (10th Cir. 2015).  Thus, the first issue presented by Mrs. Lippe's § 1983 claim is whether a seizure occurred.  This is a legal question based on "the totality of the circumstances – the whole picture." *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010).

"When an officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen 'submits to the assertion of authority.'" *Salazar*, 609 F.3d at 1064 (*quoting California v. Hodari D.*, 499 U.S. 621, 625-626 (1991)).  In *Hodari D.*, Hodari fled when he saw police officers approaching.  *Hodari D.*, 499 U.S. at 622-623.  As he ran, he tossed away what turned out to be a small amount of crack cocaine.  *Id.* at 623.  He moved to suppress the evidence as fruit of an unlawful seizure.  *Id.*  The Supreme Court, however, held that he was not seized when he discarded the crack cocaine because he was fleeing from the police officer and had not submitted to the officer's authority.  *Id.* at 629.

Similarly, in *Brooks v. Gaenzle*, the Tenth Circuit held that a fleeing suspect was not seized even though he was struck by an officer's bullet because he continued to flee and did not submit to the officers pursuing him.  *Brooks*, 614 F.3d 1213, 1221-1225.  The shot "clearly did not terminate [the suspect's] movement or otherwise cause the government to have physical control over him."  *Id.* at 1224.  More recently, in *Farrell v. Montoya*, the Tenth Circuit held that the plaintiff was not seized when the officer fired

8

three shots at her vehicle, where the shots did not halt the plaintiff's departure. *Farrell*, 878 F.3d 933, 939 (10th Cir. 2017).

In this case, it is undisputed that Mrs. Lippe did not initially submit to the show of authority exhibited by Howard when he drew his firearm and said he was a police officer. Rather, she attempted to drive away. Thus, at that point there was no seizure. *See e.g., Reeves v. Churchich*, 484 F.3d 1244, 1253 (10th Cir. 2007) (plaintiff not seized by officer pointing firearm and issuing orders because plaintiff failed to comply with the orders). However, an officer "cannot improperly provoke … a person into fleeing and use the flight to justify a stop." *United States v. Rodella*, 804 F.3d 1317, 1326 (10th Cir. 2015) (*quoting United States v. Franklin*, 323 F.3d 1298, 1302 (11th Cir. 2003)). *See also United States v. Jeter*, 721 F.3d 746, 754 (6th Cir. 2013) (if police officers put defendant in reasonable fear of physical harm that may also qualify as provocation).

Mrs. Lippe asserts that Howard pointed his gun at her, used profanity, and yelled at her to get out of the car. She further asserts that he stuck his hand with the loaded gun into her car, hitting her in the head and yelled, "I am going to kill you." If Mrs. Lippe was struck in the head with the firearm, a seizure occurred at that point. *See Hodari D.*, 499 U.S. at 625 (a seizure occurs when there is application of physical force); *Terry v. Ohio*, 392 U.S. 1, 16 (1968) (a seizure occurs whenever a police officer accosts an individual and restrains his freedom to walk away). Again, whether she was hit in the head with the firearm is a factual dispute.

Even if Howard did not intend to seize Mrs. Lippe by striking her in the head with

his firearm, a seizure can still occur. The Supreme Court has cautioned against a finely drawn reading of "means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 598-599 (1989). "It is not necessary for the means by which a suspect is seized to conform exactly to the means intended by the officer; otherwise courts could be compelled to conclude that 'one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned.'" *Vaughan v. Cox*, 343 F.3d 1323, 1329 (11th Cir. 2003) (*quoting Brower*, 489 U.S. at 598-599); *see also Melgar v. Greene*, 593 F.3d 348, 354 (4th Cir. 2010) (a government actor need not seize an individual in the precise manner intended). "In other words, so long as the instrumentality is intended, a seizure occurs even if the degree of the instrumentality's effectiveness was unanticipated." *Melgar*, 593 F.3d at 354. The fact that the seizure of Mrs. Lippe did not occur in quite the manner Howard may have envisioned does not negate the seizure.

In this case, there are disputed material facts that require determination by a jury. The progression of events leading up to Mrs. Lippe crashing her car is replete with contradictory accounts. The presence, degree, and manner of Mrs. Lippe's resistance to Howard's orders are material facts relating to the reasonableness of Mrs. Lippe's seizure. The question of whether Howard struck Mrs. Lippe with a firearm is likewise a disputed question for the jury.

### 2) *Was the seizure sufficiently justified?*

Even assuming there was a seizure, the second issue presented, whether Howard had a constitutionally sufficient justification for the seizure of Mrs. Lippe, also precludes

summary judgment here. To address this issue, the Court must examine the facts and circumstances confronting Howard before the alleged seizure.

Mrs. Lippe admits she drove back and forth on Toledo Drive and 172nd Street before parking in the wrong direction in front of the Wren's house. However, she disputes that Howard observed several traffic violations, and asserts that neither Howard nor any other OCPD officer gave her a traffic citation that evening. Whether an officer acted reasonably is "heavily fact dependent." *Olsen*, 312 F.3d at 1314. "Because the reasonableness inquiry overlaps with the qualified immunity analysis, a qualified immunity defense [is] of less value when raised in defense of an excessive force claim." *Id.* (internal quotations and citations omitted). Consequently, the Court will not grant summary judgment in excessive force cases – based on qualified immunity – if the moving party has not negated all disputed issues of material fact. *Id.*

"When there are unresolved disputes of historical fact relevant to whether the officer had probable cause and to what information he possessed – and thus to whether he may properly claim qualified immunity, a court may not grant summary judgment based on qualified immunity because the officer would not have shown that no genuine dispute exists as to material fact." *Id.* at 1312-1313 ("A decade-old case makes plain that we will not grant a defendant official qualified immunity if material facts are in dispute.").

There is an overlap between the general unlawful seizure analysis engaged in above and the first-prong analysis engaged in for purposes of qualified immunity. Both require a determination of whether Mrs. Lippe was appropriately seized by Howard. As such, for

the reasons discussed above, the moment of any seizure and its lawfulness are unclear. A jury must decide these factual questions. Thus, Howard's motion for summary judgment regarding qualified immunity is denied.

### B.    Mrs. Lippe's State Law Claims

#### 1)    *Intentional Infliction of Emotional Distress*[6]

To prevail on a claim of intentional infliction of emotional distress under Oklahoma law, a plaintiff must show: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To satisfy the second element, the defendant's conduct must be so extreme and outrageous as to be "beyond all possible bounds of decency" in the setting in which it occurred, or "utterly intolerable in a civilized community." *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986); *see also Welton*, 49 P.3d at 735; *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 916 P.2d 241, 248 (Okla. 1996). Generally, "a plaintiff must prove that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim 'Outrageous!'" *Welton*, 49 P.3d at 735.

---

[6] Howard's apparent argument that Mrs. Lippe is pursuing an inappropriate tort theory in order to avoid a statute of limitations that would bar the type of tort claims supported by her factual allegations – assault and battery or false arrest – is meritless. The federal pleading rules allow a plaintiff to plead two or more statements of a claim alternatively, or set forth inconsistent claims. FED. R. CIV. P. 8(d).

The alleged facts presented by Mrs. Lippe, if accepted as true and viewed in the light most favorable to her, could support a finding that Howard intentionally struck Mrs. Lippe in the head with his firearm and threatened to kill her. Accepting this description of the event, it could lead reasonable jurors to find extreme conduct by a police officer faced with a misdemeanor traffic violation. Thus, the Court concludes that genuine issues of material fact preclude summary judgment on this claim.[7]

### 2) *Intentional Violations of State Constitutional Protections*

Mrs. Lippe alleges that Howard deprived her of fundamental liberty rights by threatening, seizing and using excessive force against her in violation of Article II, Section 2 of the Oklahoma Constitution. Mrs. Lippe in her First Amended Complaint also cites to OKLA. STAT. tit. 22, §§ 31 and 32, which allow for lawful resistance by a party about to be injured. Howard asserts that Article II, Section 2 does not provide a private right of action.

Even assuming Mrs. Lippe could show a constitutional violation, she has offered no authority suggesting Oklahoma would recognize a private right of action. Her response brief is notably lacking any such authority. Federal courts "are generally reticent to expand state law without clear guidance from its highest court." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013) (*quoting Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993)).

In *Bosh v. Cherokee County Bldg. Auth.*, the Oklahoma Supreme Court recognized

---

[7] Of course, Mrs. Lippe would also need to establish the other elements of her tort claim, including that Howard's conduct caused her emotional distress that was severe. However, Howard's motion does not challenge Mrs. Lippe's ability to prove these elements.

a private right of action against a governmental entity for excessive force based on Art. II, § 30 of the Oklahoma Constitution, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act ("OGTCA"). *Bosh,* 305 P.3d 994, 1001 (Okla. 2013). However, the Oklahoma Supreme Court has since made it clear that *Bosh* is not a "wide-ranging authorization of private rights of action for all claims arguably arising under the Oklahoma Constitution." *See, e.g., Bruning v. City of Guthrie,* Case No. CIV-15-0003-HE, 2015 WL 4925995, at *8 (W.D. Okla. Aug. 18, 2015). "Rather, *Bosh's* rationale is limited to those circumstances where a plaintiff has 'no other avenue' for recovering for his or her claimed constitutional injuries." *Id.* (*citing Perry v. City of Norman,* 341 P.3d 689, 692-693 (Okla. 2014)); *see also McCormick v. Halliburton Co.,* 895 F. Supp. 2d 1152, 1157 (W.D. Okla. 2012) ("[T]he Oklahoma Supreme Court has held that 'the same due process protections guaranteed by the 14th amendment [to the United States Constitution] are also guaranteed by Art. 2, § 2.'") (*quoting E. Okla. Bldg. & Constr. Trades Council v. Pitts,* 82 P.3d 1008, 1012 (Okla. 2003)).

Mrs. Lippe had other avenues for recovering for her alleged constitutional injuries. She could have brought a claim for excessive force against the City under the OGTCA. *Perry,* 341 P.3d at 693. Further, the Fourth Amendment to the United States Constitution provides an explicit constitutional protection against this sort of physically intrusive governmental conduct.

Further, Mrs. Lippe's reference to OKLA. STAT. tit. 22, §§ 31 and 32 in her First Amended Complaint does not alter the Court's reasoning. In *Nelson*, the Oklahoma Court

of Criminal Appeals declined to recognize a right to resist an unlawful traffic stop. *State v. Nelson*, 356 P.3d 1113, 1123 (Okla. Crim. App. 2015) ("Balancing the State's interest in discouraging violence against the brief seizure typical to a traffic stop, this ruling does not result in a deprivation of liberty."). Referencing §§ 31-33, Judge Lumpkin in his concurring opinion makes clear that the Legislature did not incorporate a right to resist arrest. *Nelson*, 356 P.3d at 1124 (Lumpkin, J., concurring).

Accordingly, the Court grants Howard's Motion for Summary Judgment as to Mrs. Lippe's fifth cause of action for alleged violations of state constitutional protections.

### 3) *Negligence*

Mrs. Lippe identifies this as an alternative cause of action, in the event the Court finds that Howard was acting outside the scope of his employment. Howard maintains that any negligence claim against him in his individual capacity should fail because any duty owed would derive only from his duties as a police officer. The Court concludes that summary judgment on Mrs. Lippe's negligence claim is inappropriate.

"Whether a police officer's actions were taken within the scope of employment is a jury question unless only one reasonable conclusion can be drawn from the facts alleged." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1167 (Okla. 2009); *see also Nail v. City of Henryetta*, 911 P.2d 914, 917 (Okla. 1996) (question of whether police officer was acting in the scope of his employment was a question of fact for the jury when conflicting inferences could be drawn).

Section 152(12) of OGTCA defines "scope of employment" as "performance by an

employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee …." OKLA. STAT. tit. 51, § 152(12). Oklahoma law recognizes the applicability of the doctrine of respondeat superior to the OGTCA. *Nail,* 911 P.2d at 917. Under this theory, "one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Id.* *See also Rodebush v. Okla. Nursing Homes*, *Ltd*., 867 P.2d 1241, 1245 (Okla. 1993) (As a general rule, assault is not within the scope of an employee's employment; however, this general rule gives way if the act is "fairly and naturally incident to the business" and is done "while the servant was engaged upon the master's business … with a view to further the master's interest," although mistakenly or ill advised.).

Howard testified in his deposition that he believes he is an officer "24 hours a day," and that it has been "instilled in [him] … that you should always act as though you are on duty." Def. Howard's Dep. [Doc. No. 106-5 at 88]. He further testified that he was acting under color of law during his encounter with Mrs. Lippe based on his understanding of the OCPD's orders and directives that off duty police officers still have the powers of a police officer. *Id*. at 148, 174. His police vehicle was visible in his driveway that evening. *See* First Am. Compl. [Doc. No. 13 at ¶ 26]. Moreover, Howard was reprimanded by the City for not having his police badge with him that evening while carrying his Springfield XD-

40 firearm. Def. Howard's Dep. [Doc. No. 106-5 at 135, 177]. Although the parties dispute whether this particular firearm was authorized by the City for use, Howard maintains that it is his "qualified" off-duty firearm.[8] *Id.* at 177; *see also* City's Mot. for Summ. J. [Doc. No. 93 at ¶ 16]; *cf.* Pls.' Resp. in Opp'n [Doc. No. 103 at ¶ 16].

OCPD Police Chief William Citty testified in his deposition, "We expect them to enforce the law if they're off duty and they see something that's happening." Citty's Dep. [Doc. No. 103-1 at 79]. He also indicated that Howard received a Class 1 reprimand from the City for not having his police badge with him while carrying his gun during the night in question. *Id.* at 183.

In *DeCorte v. Robinson*, the Oklahoma Supreme Court upheld as consistent a jury verdict that found the City of Broken Arrow liable on the respondeat superior theory for acts committed by an off-duty police officer while also awarding punitive damages against the officer. *DeCorte*, 969 P.2d 358, 362 (Okla. 1998).[9] The court found that the officer

---

[8] Section 1289.23 of Title 21 of the Oklahoma Statutes addresses the requirements for an off-duty police officer carrying a concealed firearm. OKLA. STAT. tit. 21, § 1289.23. Howard admitted that he did not have his credentials with him at the time he had the encounter with Mrs. Lippe. Def. Howard's Dep. [Doc. No. 106-5 at 182-183]. Sections 1289.23(A) and (B) make clear that a full-time, duly appointed peace officer certified by CLEET is authorized to carry a weapon approved by the employing agency both while on active duty and during periods when the officer is not on active duty as long as the officer is wearing his uniform or has his officer's badge and CLEET card with him. Howard testified that the Springfield XD-40 firearm was his "qualified" off-duty weapon. This fact coupled with the language of Section 1289.23 lends support to Mrs. Lippe's argument that the firearm was authorized by the City for use.

[9] In explaining the "scope of employment" as applied in the context of law enforcement, the court in *DeCorte* cited to a case decided by the Florida Supreme Court. *DeCorte*, 969 P.2d at 361-362; *see also McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996). The

"certainly considered himself, as a law officer, to be acting in the interests of his employer," and that there were "adequate legal and factual grounds to support a finding that [the officer] was initially within his scope of employment duties." *Id.* "However, the jury obviously determined that during the course of events his actions exceeded that scope." *Id.* *See also Brooks v. State*, 561 P.2d 137, 140 (Okla. Crim. App. 1977) ("[I]t is the belief of this Court that any time a police officer, whether in uniform or not, takes it upon himself to enforce the law in order to maintain peace and order for the general benefit of the public, he is acting in the performance of his duties as a police officer.").

Howard testified that he believed he was acting in the interests of the OCPD and the City. *See e.g.,* Def. Howard's Dep. [Doc. No. 106-5 at 88, 148, 174]. Further, OCPD Chief William Citty's testimony, and the reprimands received by Howard, support that conclusion. Assessing the facts and evidence of record in the light most favorable to Mrs. Lippe's position, the Court finds that reasonable minds could differ as to whether Howard was acting within the scope of his employment.

Howard asserts that he owed no duty to Mrs. Lippe outside his duties as a police officer. The Court disagrees. Whether the defendant owed the plaintiff a duty of care is the threshold question in any negligence action. *Lowery v. Echostar Satellite Corp*., 160 P.3d 959, 964 (Okla. 2007). Under Oklahoma law, absent a special relationship or

---

court in Florida emphasized that a jury question exists "for acts of officers that can be described as abuses of lawful power." *McGhee*, 679 So. 2d at 733. "The employing agency is immune as a matter of law only if the acts are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess." *Id.*

relationship grounded in contract, "a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person." *Id.* The most important consideration is foreseeability of harm to the plaintiff. *Id.* Mrs. Lippe contends that Howard's duty of care was that of an individual citizen with a firearm who owes a duty to protect another from injury with that firearm. *See e.g., Annear v. Swartz*, 148 P. 706, 707-708 (Okla. 1915) (recognizing that a person in possession of a firearm must exercise reasonable care in order to avoid injury to others and concluding there was sufficient evidence to submit the issue of negligence to the jury); *see also Jones v. Redford*, 449 P.2d 890, 894 (Okla. 1969) (Under Oklahoma law, persons handling firearms are required to exercise that degree of care that an ordinary cautious and prudent person would exercise under similar circumstances).

Mrs. Lippe has presented sufficient evidence to avoid summary judgment on her negligence claim.

### C.    Claims by Mr. Lippe

*1)    Section 1983*

Howard contends that even if the Court denies his motion for qualified immunity on the § 1983 claim, that he is entitled to summary judgment against Mr. Lippe on this claim because Fourth Amendment rights are personal rights that cannot be vicariously asserted. Mr. and Mrs. Lippe do not respond to this argument in their response brief.

Howard is correct, and is entitled to summary judgment on Mr. Lippe's claim.

"Fourth Amendment rights are personal rights which … may not be vicariously asserted." *Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir. 1997) (*quoting Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978)). Mr. Lippe is not suing on behalf of his wife. Mrs. Lippe is a named Plaintiff. Mr. Lippe was not present in the vehicle and, as such, was not seized by Howard. It is undisputed that Mr. Lippe arrived on the scene after the encounter had ended and Howard had gone home. *See J.B. v. Washington County*, 127 F.3d 919, 928 (10th Cir. 1997) (upholding district court's ruling that plaintiff mother, J.B., may not assert a derivative or vicarious claim based on L.B.'s Fourth Amendment injuries).

2) *Intentional Infliction of Emotional Distress*

Howard contends that Mr. Lippe cannot recover on an intentional infliction of emotional distress claim because he was not a participant or victim in the incident causing the injury. Again, the Lippes offer no argument in opposition in their response brief. The Court agrees with Howard.

To support a cause of action under the circumstances here for intentional infliction of emotional distress, the plaintiff must show that: (1) he was directly physically involved in the incident; (2) he was damaged from actually viewing the injury to the other person as opposed to learning about the accident later; and (3) a familial or close personal relationship existed between the plaintiff and the injured party. *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 916 P.2d 241, 250 (Okla. 1996); *see also Morris v. City of Sapulpa*, Case No. CIV-10-376-CVE, 2011 WL 1627098, at *14 (N.D. Okla. April 28, 2011). Mr.

Lippe cannot satisfy the first and second elements. He was not directly physically involved in the incident, nor did he witness any injury to Mrs. Lippe by Howard. It is undisputed that he arrived later in response to a telephone call from Mrs. Lippe. By that time, Howard had left the scene. Therefore, there is no genuine issue of material fact regarding this claim, and Howard is entitled to summary judgment as a matter of law.

### 3) *Intentional Violations of State Constitutional Protections*

Because the Court has found that Mrs. Lippe's state constitutional claim is barred, Mr. Lippe's state constitutional claim, given its derivative nature, is also barred.

### 4) *Negligence/Loss of Consortium*

A husband's right to recover for loss of consortium as a result of injury to his wife has long been recognized in Oklahoma. *See Williams v. Hook*, 804 P.2d 1131, 1137, n. 33 (Okla. 1990) (*citing Aderhold v. Stewart*, 46 P.2d 346, 347-348 (Okla. 1935)). The Lippes maintain in their response brief that Mr. Lippe suffered a loss of consortium and damages because of Howard's negligence. Because the Court has determined that summary judgment is not appropriate on Mrs. Lippe's negligence claim, the Court likewise concludes that summary judgment is not appropriate as to Mr. Lippe's loss of consortium claim.

## CONCLUSION

IT IS THEREFORE ORDERED that Howard's Motion for Summary Judgment [Doc. No. 98] is GRANTED in part and DENIED in part. Howard is entitled to summary judgment on Plaintiffs' fifth cause of action for alleged violations of state constitutional

protections.  Howard is also entitled to summary judgment on all of Mr. Lippe's derivative claims, except his negligence/loss of consortium claim.  However, genuine disputes of material facts prelude summary judgment on Mrs. Lippe's § 1983 claim for unlawful seizure and excessive force, her intentional infliction of emotional distress claim, and her negligence claim.

IT IS SO ORDERED this 25th day of January 2018.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE